Referee's Report.


# J. W. GILCHRIST v. CITY OF WILKES-BARRE.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 15, 1891—Decided April 27, 1891.

(*a*) The act of May 4, 1871, P. L. 539, incorporating the city of Wilkes-Barre, provides, § 29, for the appointment of a receiver of taxes to "collect and receive all taxes, levies, and public assessments, payable and receivable within the limits of said city, for state, county, school, poor, city, special and other purposes."

(*b*) It is provided, also, that "he shall have an office, . . . . . which shall be open during business hours, . . . . . and he shall be allowed a commission . . . . . upon all amounts collected by him." By § 6, act of April 2, 1872, P. L. 740, it is provided he may have his office "in such place as may be approved by the city council : "

1. There is no legal obligation upon the city to reimburse the receiver of taxes for expenses for office-rent, fuel, light, postage and stationery ; nor to allow to him commissions upon fines, theatre licenses, sewer permits, and frontage assessments for street paving and street opening, provided for by ordinances and not passing through his hands.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 415 January Term 1891, Sup. Ct.; court below, No. 245 March Term 1891, C. P.

On January 27, 1890, J. W. Gilchrist brought assumpsit against the city of Wilkes-Barre. The cause being put at issue, it was referred to *Mr. G. R. Bedford*, as referee, who on March 3, 1891, filed the following report :

The plaintiff, as receiver of taxes for the city of Wilkes-Barre, for the years 1884 to 1888 inclusive, claims to recover from the city for office rent, fuel and light; for cost of tax duplicates ; for postal cards and printing same, notifying taxpayers of amount of taxes; for advertising notice to same effect; for stationery, blanks and postage ; for extra clerk hire, in connection with credit on city taxes of pave-warrants, and issuing certificates for balances ; for commissions on fines and licenses on permits for tapping sewers, on street-paving assessments, and on street-opening assessments.

Referee's Report.

### FINDINGS OF FACT.

1. The act of assembly approved May 4, 1871, P. L. 539, incorporating the city of Wilkes-Barre, provided for the appointment, by the president judge of the Court of Common Pleas, of a receiver of taxes to "collect and receive all taxes, levies and public assessments, payable and receivable within the limits of the said city, for state, county, school, poor, city, special and all other purposes;" and by the supplement of April 2, 1872, P. L. 740, it is further provided that "the receiver may have his office in such place as may be approved by the council."

2. The plaintiff was duly appointed receiver of taxes of the said city of Wilkes-Barre for the years 1883, 1884, 1885, 1886, 1887 and 1888, and discharged the duties of the office for said term, and his commissions were fixed at two and one half per cent.

3. The seventh section of the ordinance entitled "Streets," approved March 25, 1878, provides that "where owners of premises lay down new flagstone sidewalks, etc., an allowance of six per cent per square foot will be made them, to apply only on their city taxes assessed against that particular property." Under this section, the city issues to the party entitled a pave-warrant, which the party presents to the receiver, who credits the same on the said taxes, enters the transaction on a book kept for that purpose, and issues a certificate for any balance of the pave-warrant yet remaining after the payment of the taxes.

4. Section 5 of the ordinance entitled "Licenses and Permits," approved May 11, 1880, provides that "every license or permit, provided for by the city ordinances, shall be signed by the proper officer or officers authorized to issue the same, and, except burial permits, countersigned by the receiver of taxes; and the assessed license tax or the fee for the permit, except burial permits, paid to the said receiver for the use of the city treasury, before such license or permit shall be in force."

5. The number of pave-warrants taken up during the years 1884, 1885, 1886, 1887 and 1888 were 1758, and new certificates for unexpended balances issued by the receiver to the number of 1306. In the latter cases, the defendant's services were reasonably worth fifty cents, but when the warrant was

wholly taken up in the first instance, the service was worth twenty-five cents only.

6. The plaintiff furnished tax duplicates at an expense of $120.25.

7. The plaintiff, at an expense of $735, sent postal cards, during said years, to the taxpayers, notifying them of the payment of taxes, and also published notice thereof in the papers.

8. The plaintiff paid out for stationery and postage the sum of $140, necessarily expended in the performance of his duties aforesaid.

9. The total amount of fines paid the mayor, etc., and theatre licenses paid the city, was $17,396.80, and two and one half per cent of same is $434.92.

10. The amount paid the city for permits to tap sewers, was $26,868.80, whereof two and one half per cent is $671.72; for frontage assessments for street opening, $3,426.80, whereof two and one half per cent is $85.67; and for assessments for street paving, $175,861.60, whereof two and one half per cent is $4,396.54. All said fines, license permits and assessments were provided for by the city ordinances.

11. The plaintiff's office for the transaction of business was located on the public square in the city, at the suggestion of members of council, the same being a convenient point for persons having business with the receiver; and for the rent thereof, and light and heat for the same, the receiver paid, during each of said years, the sum of $300.

12. Due demand was made upon the defendant for payment, and the plaintiff offered in due time to collect said assessments, which defendant refused to allow.

### CONCLUSION OF LAW.

This case is ruled by the opinion of the court in Gilchrist v. Wilkes-Barre, No. 159 November Term 1885; and, upon the authority of that case, I report that the plaintiff is entitled to recover in the matter of pave-warrants taken up the sum of $766, and for tax duplicates the sum of $120.25; and for the aggregate amount of $886.25, judgment should be entered against the defendant. Other claims by the plaintiff are disallowed.

—To the report of the referee, the plaintiff filed exceptions alleging that the referee erred, in disallowing: ·

Opinion of Court below.

1. The claim for postal cards, $735.[1]

2. The claim for postage and stationery, $140.

3. The claim for fines and licenses, $434.[3]

4. The claim for permits to tap sewers, $671.72; paving assessments, $4,396.54; and street-opening assessments, $85,67.[4]

5. The claim for office-rent, fuel, and light.[5]

Said exceptions having been argued, the court, RICE, P. J., on March 4, 1891, upon the opinion in Gilchrist v. Wilkes-Barre, a former case between the same parties, overruled the exceptions and ordered that judgment be entered in accordance with the referee's report.

The opinion of the court below, referred to, was as follows, RICE, P. J.:

The act incorporating the city of Wilkes-Barre also created the office of receiver of taxes, and made it his duty "to collect and receive all taxes, levies and public assessments, payable and receivable within the limits of said city for state, county, school, poor, city, special and all other purposes." It further provides that he should have an office in the Fifth ward, to be kept open during business hours for the receipt of taxes, and should be allowed a commission of not more than two and one half per centum upon all amounts collected by him: Act of May 4, 1871, P. L. 539. The supplement of April 2, 1872, P. L. 740, repealed the clause of the original act requiring him to keep his office in the Fifth ward, and provided that he may have the same in such place as may be approved by the city council. The plaintiff was appointed tax receiver in June, 1883, and, at the suggestion of certain members of council, moved the office to a convenient place on the public square.

There is plausibility in the referee's conclusion that the city is liable to the plaintiff for the amount paid by him for office-rent. There are, however, two objections which seem to us fatal to the plaintiff's claim. In the first place, while no objection to the location of the office is suggested, still it does not appear that any action of the city council as a body was ever taken or requested on the subject, and we need hardly remark that the suggestions of individual members of the council cannot take the place of such action. In fact, then, the selection of the office was the plaintiff's individual and voluntary act;

Opinion of Court below.

and, even supposing that the duty of the receiver to obtain the approval of council, is sufficient ground for implying a legislative intent to create an obligation on the part of the city to pay the rent, such obligation is not an unconditional one, but the approval of council is essential to the creation of any liability.   Under the referee's interpretation of the charter, the city is interested, not only in the question of location, but of the rent to be paid, and is entitled to the deliberative judgment of the designated tribunal upon those questions.   It certainly never was contemplated that the supervisory authority of the city council might be ignored, and yet the city be bound either to the lessor or the receiver by a lease of such premises and upon such terms as he might deem wise.   We do not intend by this remark to suggest that the plaintiff's office is unsuitable, or the rent unreasonable, but to show the effect of holding that the approval of council is not essential to the creation of liability on the part of the city.   The officer, although acting in entire good faith, or even the court and jury, cannot thus put themselves in the place of the council, to whose supervisory discretion the law has committed the matter.

But further, we are of opinion that, as the charter does not expressly declare it to be the duty of the city to provide the receiver with an office, no legal obligation so to do can be implied from the nature of his duties, or from the fact, even conceding it to be so, that he is a city officer, or from the fact that the location of his office is made subject to the approval of the city council.   He takes the office with all its burdens, and amongst these is the duty to " have an office which shall be open during business hours for the receipt of taxes."   The legislature had complete supremacy over the whole matter, and could in its discretion require the receiver to keep his office in a certain ward, as in the act of 1871, or make its location subject to the approval of the city council, as in the act of 1872.   Under the former provision, the city was no more liable for the rent than the county, or the school, or poor district.   What greater reason is there for presuming such liability under the latter provision ?   The manifest, and, so far as we can discover, the sole purpose of both was to prevent the location of the office in an inconvenient place, the latter simply giving a somewhat greater latitude of choice than was allowed

under the former. If it had been intended to make it the duty of the city to provide an office for the receiver, it seems to us clear that the legislature would not have left it to implication, but would have said so in direct terms. In the absence of such express provision, the presumption is that the commissions upon collections were deemed sufficient to repay his expenses and compensate him for his services. The adequacy of the allowance was for the legislature, and not for the court to determine. For these reasons, we conclude that the city is under no legal obligation to provide an office for the receiver, and therefore there can be no implied assumpsit to repay him the amount expended for rent, heat and light. The defendant's second exception is sustained.

The plaintiff's fifth, and the defendant's first exceptions raise questions which may be considered together. The referee has allowed the plaintiff commissions upon amounts paid into the city treasury for permits to tap sewers, building permits and theatre licenses, although the money did not actually pass through his hands, upon the ground that the ordinances concerning licenses and permits entitled him to receive it. On the other hand, he has disallowed the claim to commissions on contributory assessments on street openings, the same not having been collected by the receiver and he not having performed any services concerning the same, upon the ground that such assessments are not within the meaning of the act of 1871, supra. In addition to what the referee has said upon the construction of the terms " taxes, levies and public assessments," as used in the act of 1871, we refer, without quoting them, to the provisions relating to the collection of such assessments contained in § 16, act of May 4, 1871, P. L. 539; § 1, act of April 2, 1872, P. L. 740; § 2, act of April 22, 1856, P. L. 525; and § 7 of the act of April 5, 1867, P. L. 841. These provisions, prescribing as they do the specific mode in which the collection of these assessments shall be made, tend to show that the legislature did not mean to impose the duty upon the receiver; and, as no ordinance makes it his duty and no service was performed, the referee rightly held that he is not entitled to commissions on such assessments paid directly into the city treasury.

We think it equally clear that the charter does not make it

the duty of the receiver nor give him the right, to collect the fees established by ordinance for theatre licenses, and sewers and building permits. These were ordained under the power to regulate, and not for revenue, and therefore cannot be regarded in this connection as taxes: See clause 19, § 27, act of 1871, supra; also city ordinances, titles, Amusements, Licenses and Permits; Johnson v. Philadelphia, 60 Pa. 445. If, then, the receiver is entitled to collect these fees and to compensation for the service, his right is derived solely from the ordinance. The provision of the charter allowing him commissions obviously has relation to such collections as the charter authorizes him to make. Conceding for a moment that, in addition, the city council could by ordinance appoint him to make the collections in question, still he cannot recover on a quantum meruit count, for no service was rendered by him, nor under the ordinance, for it annexes no compensation to the duty or appointment. The general doctrine upon the subject of the compensation of municipal officers is so clearly stated by Judge DILLON that we are constrained to quote from his work at some length: " There is no such implied obligation on the part of municipal corporations, and no such relation between them and officers which they are required by law to elect, as will oblige them to make compensation to such officers, unless the right to it is expressly given by law, ordinance or by contract. Officers of a municipal corporation are deemed to have accepted their office with knowledge of, and with reference to, the provisions of the charter or incorporating statute relating to the services which they may be called upon to render, and the compensation provided therefor. Aside from these, or some proper by-law, there is no implied assumpsit on the part of the corporation with respect to the services of its officers. In the absence of express contract, these regulate the right of recovery, and the amount:" 1 Dillon on Mun. Corp., § 169. For these reasons the defendant's first exception must be sustained. The remaining exceptions filed by the plaintiff are dismissed for the reasons contained in the referee's report.

—Judgment having been entered, the plaintiff took this appeal, specifying that the court erred:.

1–5. In not sustaining the plaintiff's exceptions.[1 to 5]

*Mr. Henry A. Fuller*, for the appellant.

Counsel cited: Endlich on Stat., §§ 2, 4, 17; Pittsburgh v. Kalchthaler, 114 Pa. 552; Olive Cemetery Co. v. Philadelphia, 93 Pa. 129; Erie City v. Church, 105 Pa. 278.

*Mr. William S. McLean*, for the appellee, was not heard.

In the brief filed, counsel cited: 2 Dill. on Mun. Corp., 2d ed., § 230.

PER CURIAM:

Judgment affirmed.

————————

## LUZERNE B. & S. ASS'N v. PEOPLES' BANK.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY

Argued April 16, 1891—Decided April 27, 1891.

(*a*) The counsel fees of the plaintiff in partition, as fixed at a sum certain by agreement with the defendant's counsel, were taxed by the court and ordered to be paid out of the fund. After payment, the defendant, alleging that his counsel was without authority to make the agreement, at once moved that the order of allowance be revoked:

1. In such case, the want of authority being shown, and the agreement disaffirmed by the defendant, it was not error to revoke the order of taxation of the counsel fees, and to proceed to a re-taxation thereof, under the act of April 27, 1864, P. L. 641, as though the agreement of counsel had not been made.

2. To authorize the court to act upon an agreement of counsel fixing the plaintiff's counsel fees, the assent of the parties to the partition proceedings should be clear and beyond dispute; and where the proceedings are adversary, the counsel fees are to be taxed as costs, not by the parties or by the attorney, but by the court.

3. Under the said act of April 27, 1864, the court is bound to tax the allowance of counsel fees, simply as part of the costs, capable of calculation in view of professional services actually rendered, and not as a commission at a rate per cent upon the amount of the fund in court: Grubbs' App., 82 Pa. 29.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.