# Towle *v*. City of Mobile.

## *Assumpsit.*

(Decided Nov. 28, 1911. Rehearing denied May 9, 1912. 58 South. 668.)

1. *Municipal Corporations; Officers; Right to Assistant.*—A city engineer is not entitled to be reimbursed for the payment for services of a rodman, where the services were rendered and paid for after the city had notified the engineer that such assistance would not be paid for by the city.

[Towle v. City of Mobile.]

2. *Same; Duties.*—A public officer must perform the duties of his office for the salary stipulated without right to reimbursement for assistance not provided by law.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFORD BERNEY.

Action by Albert S. Towle against the City of Mobile to recover money paid out for a rodman for 34½ months, at the rate of $25 per month, during the second term of plaintiff as City Engineer of the City of Mobile. Judgment for defendant, and plaintiff appeals. Affirmed.

The second plea is as follows: "That there is no law or ordinance in force or effect since January 1, 1903, requiring or providing for the election or appointment of the employe of the city engineer named in said complaint, and the defendant further says that said rodman spoken of in the complaint was never elected or appointed by the mayor and general council of the city of Mobile, nor was there any lawfully authorized employment of said rodman."

D. B. COBBS, for appellant. A city can contract impliedly without passing a resolution, motion, etc.—*Brush Co. v. Montgomery*, 114 Ala. 445. It is the duty of the city to pay legitimate current expenses of its different departments.—*White v. Mayer*, 119 Ala. 480. A failure or refusal to appropriate does not abrogate the duty to pay.—*Brush Co. v. Montgomery, supra; Coleman v. Hartford*, 157 Ala. 550. The engineer had the implied authority to continue his rodman, and be reimbursed therefor.—*Montgomery v. Barbour*, 45 Ala. 242. It was not necessary to have a resolution passed to allow such expense as it had been the custom and the usage of the city to pay the same.—*Selma v. Mullins*, 46 Ala. 415; *City Council v. Montgomery*, 79 Ala. 242;

*New Decatur v. Berry,* 90 Ala. 432; *Allen v. LaFayette,* 89 Ala. 652. There is no merit in the motion to strike bill of exceptions.—*City of Montgomery v. Wyche,* 53 South. 786; *Fulton v. The State,* 54 South. 688; Sec. 3019, Code. 1907.

B. BOYKIN BOONE, for appellee. The bill of exceptions should be stricken.—Acts 1907, 562. The local. act governed in reference to signing bills of exceptions in the Mobile Law and Equity Court, and this act requires in section 22 that the bill be presented within thirty days.—*Clemons v. The State,* 52 South. 467. Counsel discusses the assignments of error and insists that the plaintiff failed to make out a case, and that the city's special plea was proven, and that, hence, the court was not in error in the judgment rendered.

DE GRAFFENRIED, J.—It appears from this record that the City of Mobile, by virtue of a duly enacted ordinance, established the position of "rodman" and fixed for the incumbent a fixed salary of $25 per month. This ordinance attached the rodman to the office of city engineer, and the rodman was, at all times, at the beck and call of such engineer and subject to his orders. The ordinance was repealed several years before the appellant, Towle, became city engineer of Mobile, and for his predecessor, one Ross, the city authorities made special provision for a rodman, placing him at the disposal of Ross, and paying him a salary of $25 per month during the term of office of Ross. When Towle, who succeeded Ross, became city engineer, he proceeded to employ a rodman and claimed that the city should pay such rodman. Thereupon the mayor of the city wrote appellant on February 28, 1906, a letter stating that, "After to-day, your assistant or rodman will be discontinued from

[Towle v. City of Mobile.]

the pay roll." It appears that after the date of the
above letter the city paid, at the solicitation of the ap-
pellant, his rodman for the month of March, 1906, but
that this payment was made with full knowledge that no
further payments would be made appellant on account
of a rodman, and that, although, during the spring and
summer of 1906, the appellant repeatedly called upon
the city authorities to pay him $25 per month for such
rodman, the city declined to do so. In other words, the
evidence is clear that while during his entire term of
office, the appellant employed a rodman at $25 per
month and paid him out of his own funds, he employed
such rodman without authority  from the city and
against the express direction of the city authorities.
There was no dispute about the fact that the city was
liable to appellant for said sum of $25 per month, if
liable at all, on that account. The evidence of the ap-
pellant tended to show that it was a physical impossi-
bility for him to perform the duties of his office without
a competent rodman; that the duties of a rodman re-
quire technical skill; that it was an impossibility for
him to pick up a rodman every time he needed one; and
that it was necessary for him to have, as city engineer
of Mobile, a rodman, at all times, at his beck
and call. There was evidence that, in addition to the city
engineer, the city of Mobile had a board of public works,
and that this board had in its employ engineers and
rodmen; but whether, when called upon by the city for
work requiring the services of a rodman, the appellant
could have obtained a rodman from the board of public
works, the evidence fails to disclose. The evidence of
the appellant further tended to show that the city of
Mobile, during his term of office, kept him constantly
employed in work for the city and in such work as
required the constant attendance of a rodman.

We have above stated the evidence as broadly as it can be stated in favor of the appellant, and the sole question is: "Can the city of Mobile, in this action, be forced to reimburse appellant for the money paid out by him for a rodman?"

In the case of *Coleman v. City of Elgin*, which discusses a question somewhat analogous to the question presented by this record, the Appellate Court of Illinois said: "If the furnishing of an office for the police magistrate and defraying the expenses of such office is regarded as a legitimate corporate purpose for which the city might become liable, there was no action of the city creating any such liability. Appellant rented the office and paid the expenses without the authority or sanction of the city, and there being no absolute duty on the city to furnish the office, he could not make the city his debtor without its consent." While, in the above case, the city had provided the plaintiff a room in which to try his cases, the room so provided was unfit for the purpose, and the plaintiff rented him a room which was suitable for the purpose. It was held that the city was not liable.—*Coleman v. City of Elgin*, 45 Ill. App. 64.

In the case of *Gilchrist v. Wilkesbarre*, in which the act incorporating the city of Wilkesbarre was construed, and in which it was provided that said city should have a receiver of taxes, with certain prescribed duties, and who was, by such act, *required* to have an office in some part of the city to be approved by the city council and to keep it open during the office hours, the facts were as follows: The plaintiff was made the receiver of taxes for said city and without the express approval of the council—but without objection on the part of that body—rented an office and, the city refusing to pay the rent, paid it himself and then sued the city for the

amount so paid. There was no question as to the suitable location of the office or that the amount paid out was not a reasonable sum for the city to pay if liable *at all*. Speaking on this subject, the Supreme Court of Pennsylvania said: "We are of opinion that, as the charter does not expressly declare it to be the duty of the city to provide the receiver with an office, no legal obligation to do so can be implied from the nature of his duties, or from the fact, even conceding it to be so, that the location of his office is made subject to the approval of the city council. He takes the office with all its burdens, and among these is to have an office which shall be open during business hours for the receipt of taxes."— *Gilchrist v. Wilkesbarre,* 152 Pa. 114, 21 Atl. 805.

The case which most strongly expresses the views which are insisted upon by the appellant is the case of *Sniffen v. City of New York.* In that case an ordinance, adopted in 1839, provided that "the attorney of the corporation shall hereafter receive a salary of $2,250 per annum and the further sum, in lieu of clerk hire, of $750, payable quarterly." In May, 1844, the salary was reduced by the city to $2,000, and the allowance of $750 in lieu of clerk hire was abolished. This being the situation, the attorney of the city hired him a clerk, paid the clerk out of his own funds, and sued the city for the amount so paid. In this case the superior court of New York held that the city attorney was entitled to recover, as clerk hire, the amount which the city had previously paid, $750, and not more, and on the subject said: "The corporation was bound to pay him the full sum of ($2,000 salary) without any deduction, and their obligation to do this was not at all affected by their omission to make an appropriation for the necessary expense of the office. This they were bound to do at any rate in order to fulfill their contract with the attorney, and they

cannot make their omission to perform their duty in one respect the justification of a breach of contract on the other."—*Sniffen v. New York,* 4 Sandf. (N. Y.) 193.

The language in the above case is broad and sweeping, and, in our opinion, is incompatible with the general, well-recognized, and well-settled rule that a person accepting a public office is bound to perform the *duties* of his office for the *salary.* If he, to properly perform those duties, pays money out of his own funds, he has no right to demand as matter of right, unless there is some statute authorizing it, reimbursement. Whenever he considers the compensation inadequate, he is at liberty to resign.—Dillon on Municipal Corporations (5th Ed.) § 426.

There existed, as we have said, in the city of Mobile, for many years, a rodman, and if it be true that appellant, against the express direction of the city authorities and after the ordinance providing for the services of a rodman had been abolished, had the authority to continue a rodman at the expense of the city, then he had, by virtue of his office or employment, a right to veto the acts of the city authorities. "It seems to be well settled," says the Supreme Court of Alabama, "that the power to create an office includes the power to destroy or abolish it, and that whenever the people in convention, or through the Legislature, clothe any department of the government, or any of its boards, or officers, or municipalities, with power, at discretion, to create an office, they clothe the body thus authorized in the absence of a declaration to the contrary, with like power to abolish the same."—*Oldham v. Mayor and Aldermen of Birmingham,* 102 Ala. 357, 14 South. 793.

While some of the doctrines announced in *Oldham's Case, supra,* have been abrogated by the adoption of section 180 of the present Constitution, the facts in this

[Towle v. City of Mobile.]

case show with clearness that the appellant, in the employment of a rodman, did that which the city authorities informed him he should not do at the expense of the city, and which under the facts as shown by this record, the city authorites had a right to declare he should not do at the city's expense. While he was entitled to his salary of $1,200 per annum, and while the city had no right to require him to pay the expenses of a rodman out of his salary, nevertheless, if called upon by the city to perform duties which he could not perform without the services of a rodman, if was his duty to call upon the city for a rodman and let the city decide whether it would elect to furnish the rodman or permit such duties to go unperformed. In other words, under the facts as we understand them, when the appellant was notified by the city that the services of his assistant had been dispensed with and that the city would no longer pay such assistant, it was the duty of the appellant, if he elected to hold his office and not to resign it, to have proceeded with the performance of such duties as he could, even though imperfectly, perform without the aid of an assistant, and to have simply held himself in readiness—and to have so notified the city—to perform the duties of his office for the performance of which the services of an assistant were required whenever the city saw proper to furnish him, at the expense of the city, such rodman or assistant. If the city elected to so cripple the appellant by the withdrawal of the services of an assistant as to render his office of little or no value to the city, this was a matter for the city to determine, and not one for appellant. The servant is not greater than the master, and he should not dictate to the master the manner in which he shall conduct his affairs. The vice of the opinion in the case of *Sniffen v. City of New York, supra,* unless there was a general

ordinance or law requiring the city to pay the expenses of its officers and employes, consists in the failure of the court, in that case, to apply the above well-known and common sense principles, and in that case there was no express direction from the city authorities to the city attorney *not to hire*, at the *expense* of the *city*, a clerk, and *no express* notice that such clerk had been dropped from the city pay roll.

It seems clear that under all of the evidence set out in the bill of exceptions, the appellee established the facts set up in its second plea as a defense to the complaint, and that it was entitled, under all the evidence, to the general affirmative charge which at its written request the court gave to the jury in its behalf.

The judgment of the court below is affirmed.

Affirmed.